**SARHANK GROUP, Petitioner–Appellee,**

v.

**ORACLE CORPORATION, Respondent–Appellant.**

Docket No. 02–9383.

United States Court of Appeals, Second Circuit.

Argued: Feb. 4, 2005.

Decided: April 14, 2005.

Barry R. Fischer, New York, N.Y. (Fischer & Mandell, LLP, New York, N.Y.), for Petitioner–Appellee.

Elizabeth A. Sherwin, New York, N.Y. (Robin L. Cohen, Dickstein Shapiro Morin & Oshinsky, LLP, New York, N.Y. on the brief), for Respondent–Appellant.

Before: NEWMAN and POOLER, Circuit Judges; and BRIEANT, District Judge.[*]

BRIEANT, District Judge.

Respondent–Appellant Oracle Corporation ("Oracle") appeals from a judgment and amended judgment in favor of Petitioner–Appellee Sarhank Group ("Sarhank") granting its petition to confirm a commercial arbitration award rendered jointly and severally against Oracle and its wholly owned subsidiary Oracle Systems, Inc. ("Systems"), by the Cairo (Egypt) Regional Centre for International Commercial Arbitration.

Sarhank is a corporation existing under the laws of Egypt, having its principal place of business in Cairo, Egypt. Oracle is a Delaware Corporation with its principal office in California. Systems, not sued here, is a wholly owned subsidiary of Oracle established under the laws of the Republic of Cyprus.

Sarhank entered into a bilateral executory contract ("Agreement") with Systems in June 1991, which was subsequently extended annually through May 1997, to be performed within Egypt. This Agreement contained an arbitration clause submitting all disputes between Sarhank and Systems for arbitration under Egyptian law. In 1997, a dispute arose between Sarhank and Systems. Systems, acting through a different Oracle subsidiary, notified Sarhank that it was exercising its right to terminate. It did so, and thereafter, Sarhank served a demand for arbitration upon both Oracle and Systems. Oracle itself was not a signatory to the Agreement, nor did it execute any written agreement to arbitrate with Sarhank.

On April 2, 1998, an international arbitration was commenced before the Cairo Regional Centre for International Commercial Arbitration. Sarhank submitted monetary claims totaling approximately $10 million. Oracle objected to the arbitration on the ground that it was not a party to the arbitration because it had not signed the Agreement and therefore had never consented to arbitration. Purporting to apply Egyptian law, the three-member panel of arbitrators rejected this defense, deeming Oracle bound by the Agreement. On March 11, 1999, the panel issued a unanimous decision holding Oracle and Systems jointly and severally liable for

[*] Honorable Charles L. Brieant of the United States District Court for the Southern District of New York, sitting by designation.

$1,902,573, after an offset by an award to Systems in the amount of $28,143.

Oracle appealed this decision unsuccessfully to the Cairo Court of Appeals and the Egyptian Court of Cassation ("Egyptian Supreme Court"). While Oracle's appeal to the Egyptian Supreme Court was pending, the Cairo Court of Appeals issued an execution order on March 22, 2000, which the Egyptian Supreme Court upheld. The Egyptian Supreme Court thereafter upheld the arbitration award as well. We were informed at the oral argument that Systems had paid nothing towards the award, and is currently contesting its liability in the Courts of Egypt.

Sarhank petitioned the United States District Court in the Southern District of New York to confirm and enforce the foreign arbitration award against Oracle. Jurisdiction was premised on the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), implemented at 9 U.S.C. §§ 201–208. In support of its contention that subject matter jurisdiction existed under the Convention, Sarhank made these allegations: (1) Systems and Sarhank entered into a written agreement containing an arbitration clause; (2) Systems was a shell corporation; (3) the agreement created a "commercial legal relationship" between Sarhank, Systems, and Oracle; and (4) the Egyptian arbitral panel made an arbitration award against Oracle.

Oracle contended in the district court that the Convention did not apply and therefore the district court lacked subject matter jurisdiction; that the district court should decline to enforce the award against Oracle on the ground that Oracle was not a party to the Agreement; that the arbitrators lacked jurisdiction to determine arbitrability, the case was not ripe[1] and enforcement of the award would be contrary to American public policy. The district court rejected all these arguments and enforced the award, holding that the Convention did apply, the arbitrators had the power to determine arbitrability, the action was ripe for review and that enforcement of the award would not violate American public policy. An amended judgment was filed on February 24, 2004, awarding Sarhank $105,598.01 in pre-judgment interest, increasing the total amount recovered to $2,008,171.01.

The district court's legal interpretations of the Convention are reviewed *de novo,* and its findings of fact are reviewed for clear error. *See Pike v. Freeman,* 266 F.3d 78, 86 (2d Cir.2001).

The district court concluded as a matter of law that "[t]he Convention clearly provides the basis for federal jurisdiction over the enforcement of foreign arbitration awards," as the "Convention applies to the recognition and enforcement of arbitral awards made (1) in the territory of a State other than the State where the recognition and enforcement of such awards are sought and (2) arising out of difference between persons, whether physical or legal." *Sarhank Group v. Oracle Corp.,* No. 01–civ–1295, 2002 WL 31268635 (S.D.N.Y. October 8, 2002), slip op. at 6–7.

The District Court also concluded that the arbitrators' conclusion that the Agreement was binding upon Oracle, by virtue of a partnership relationship between Oracle and Systems, was a matter of contract interpretation that the Court would not review.

*Subject Matter Jurisdiction*

In its Petition to the district court, Sarhank invoked the court's subject-matter jurisdiction under 9 U.S.C. § 203. In relevant part, this section provides that "An action or proceeding falling under the Convention shall be deemed to arise under

---

**1.** At the time, an appeal was pending in the Egyptian Supreme Court.

the laws and treaties of the United States." Section 202 describes which actions "fall under the Convention." In relevant part, it provides that:

An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract or agreement described in section 2 of this title, falls under the Convention.

A United States District Court has subject matter jurisdiction over arbitral awards that arise out of commercial agreements.

Oracle argues that the district court lacked subject matter jurisdiction in the absence of a signed written arbitration agreement between Sarhank and itself, and because the district court failed to determine independently whether Oracle had consented to arbitration. Oracle's argument depends entirely upon its view of the merits of the case, and therefore does not involve a lack of subject matter jurisdiction, although cases confusing these issues are frequently found in the reports. Clearly, by statute, see 9 U.S.C. § 203, district courts have subject matter jurisdiction over cases brought to enforce arbitration awards issued under the Convention. When a party challenges the court's subject matter jurisdiction based upon the merits of the case, that party is merely arguing that the adversary has failed to state a claim. The court has and must assume subject matter jurisdiction and hear the merits of the case. *Steel Co. v. Citizens for a Better Envir.*, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Where, as here, the Petition seeks relief under the Constitution or the laws of the United States, the federal courts have subject matter jurisdiction under 28 U.S.C. § 1331, unless the federal claim is immaterial, frivolous and insubstantial or made solely for the purpose of obtaining jurisdiction. *Miller v. Am. Stock Exch.*, 317 F.3d 134, 150 (2d Cir. 2003). Sarhank claimed jurisdiction under the Convention; described a written agreement between Systems and Sarhank; in effect, alleged that a legal relationship was created between Oracle and Sarhank because Systems was a shell corporation; and described an arbitral award. Thus, Sarhank has, for subject matter jurisdiction purposes, adequately pleaded an arbitral award falling under the Convention. Because its allegations are not immaterial, frivolous, or made solely to obtain jurisdiction, the district court had subject matter jurisdiction to resolve the legal and factual questions ancillary to determining whether the Egyptian award could be enforced in the United States against Oracle. These questions are merits questions, not subject matter jurisdiction questions.[2]

---

**2.** Notwithstanding *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), and like cases, Oracle strongly urges that we must find that the district court lacked subject matter jurisdiction based on *Kahn Lucas Lancaster, Inc. v. Lark Int'l. Ltd.*, 186 F.3d 210 (2d Cir. 1999), in which we stated that the district court lacked subject matter jurisdiction to entertain a petition to compel arbitration under the Convention because there was "no 'agreement in writing' sufficient to bring [the] dispute within the scope of the Convention." 186 F.3d at 218–19. For three reasons, we do not believe that *Kahn Lucas* controls the outcome of the jurisdictional question with which we are presented. First, the *Kahn*

*Lucas* court assumed the dispositive question was one of subject matter jurisdiction without addressing the distinction between determining whether subject matter jurisdiction existed and determining—on the merits—whether the parties had made an agreement to arbitrate. Second, it would have made no difference in the outcome if we had stated that we had jurisdiction and proceeded to address the existence of an agreement to arbitrate. The Supreme Court has concluded that its own decisions, issued under like circumstances, lack precedential value on the issue of subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 91, 118

*Article V  Defenses*

■ Article V(2) of the Convention provides that a United States court is not required to enforce an agreement if its subject matter is not capable of arbitration in the United States, *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Ind.*, 508 F.2d 969, 974 (2d Cir.1974), or if enforcement of the arbitral award would be contrary to American public policy. Federal arbitration law controls in deciding this issue. *See Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l. Inc.*, 198 F.3d 88, 96 (2d Cir.1999) ("When we exercise jurisdiction under Chapter Two of the FAA, we have compelling reasons to apply federal law, which is already well-developed, to the question of whether an agreement to arbitrate is enforceable.").

■ Under American law, whether a party has consented to arbitrate is an issue to be decided by the Court in which enforcement of an award is sought. An agreement to arbitrate must be voluntarily made, and the Court decides, based on general principles of domestic contract law, whether the parties agreed to submit the issue of arbitrability to the arbitrators. *First Options, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (The arbitrability of a dispute's merits depends on whether a party has agreed to arbitration, and the issue of whether arbitrability is decided by the arbitrator depends on whether the parties agreed to submit this issue.); at 943 ("If ... the parties did *not* agree to submit the arbitrabili-

ty question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently."). As arbitrability is not arbitrable in the absence of the parties' agreement, the district court was required to determine whether Oracle had agreed to arbitrate.

■ The district court held that it did not need to determine whether Oracle consented to arbitrate because it was simply being asked to enforce a foreign arbitration award in which arbitrability was previously determined. In supporting this conclusion, Sarhank relies on the Arbitrators' decision which states that "The parties to the dispute agreed to govern this present arbitration in all respects in accordance with Egyptian Law pursuant to Article 22 of the Agreement." Article 22 of the Agreement states that "This Agreement shall be construed and governed in all respects in accordance with the laws of the Republic of Egypt and the parties hereto hereby agree to submit to the jurisdiction of the Courts of Cairo." Oracle is not a named party to the Agreement. The Agreement is specifically entitled "Agency Agreement between Oracle Systems Limited and Sarhank Group (Moustapha I. Sarhank)." An Agreement between Sarhank and Systems which does not mention Oracle does not evidence a "clear and unmistakable", *First Options*, 514 U.S. at 944, 115 S.Ct. 1920, intent by Oracle to

---

S.Ct. 1003, 140 L.Ed.2d 210 (1998). Applying this analysis, we conclude that *Kahn Lucas* does not require us to reverse the district court's conclusion that it had subject matter jurisdiction. Finally, to the extent that *Kahn Lucas* is read as viewing an element of a claim as a jurisdictional requisite, the absence of which deprives the Court of subject matter jurisdiction, it is contrary to prior holdings of this Court, including *Nowak v. Ironworkers*

*Local 6 Pension Fund*, 81 F.3d 1182 (2d Cir. 1996), and has been subsequently contradicted in *Spielman v. Merrill Lynch, Pierce, Fenner & Smith*, 332 F.3d 116, 132–33 (2d Cir. 2003) (Newman, J., *concurring* ).

Oracle also relies on *Czarina, LLC v. W.F. Poe Syndicate*, 358 F.3d 1286 (11th Cir.2004). To the extent the facts and holding of *Czarina* are not distinguishable, we reject its holding as inconsistent with *Bell, Steel Co.*, and *Miller.*

arbitrate or to permit the arbitrator to decide the issue of arbitrability.

■ The Arbitral Tribunal held that "despite . . . their having separate juristic personalities, subsidiary companies to one group of companies are deemed subject to the arbitration clause incorporated in any deal either is a party thereto provided that this is brought about by the contract because contractual relations cannot take place without the consent of the parent company owning the trademark by and upon which transactions proceed." The district court was not, as a matter of law, bound by the arbitrators' determination of arbitrability on the part of Oracle on this ground. On the present record, there is no "clear and unmistakable evidence" that Oracle submitted the issue of arbitrability to the arbitrators. Merely arguing non-arbitrability to the arbitrators and then to the Egyptian courts does not amount to consent by Oracle to having the arbitrators decide the issue. *See First Options,* 514 U.S. at 946, 115 S.Ct. 1920. Oracle objected repeatedly to its being a party to the arbitration, thus preventing a finding that it waived its ability to object. *See Opals on Ice Lingerie, Designs by Bernadette, Inc. v. Body Lines Inc.,* 320 F.3d 362, 368 (2d Cir.2003).

Oracle never signed an arbitration agreement with Sarhank, the customary implementation of an agreement to arbitrate. While this Court has recognized instances in which nonsignatories can be bound to the arbitration agreements of others, such cases are limited to instances of incorporation by reference, assumption, veil piercing/alter ego and estoppel and the like. *See Monegasque De Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukr.,* 311 F.3d 488, 495 (2d Cir.2002.). In all such situations a court has found an agreement to arbitrate, under general principles of contract law, that is to say that the totality of the evidence supports an objective intention to agree to arbitrate. Similarly, "[t]raditional principles of agency law may bind a nonsignatory to an arbitration agreement." *Thomson–CSF, S.A. v. American Arbitration Ass'n,* 64 F.3d 773, 777 (2d Cir.1995).

Sarhank's argument concedes, as it must, that the arbitrators' conclusion that Oracle was bound to arbitrate as a non-signatory was based solely upon Egyptian law. *See Sarhank Br.* at 22 ("As a simple matter of Egyptian contract law, Oracle was bound by the arbitration clause by the signature of its wholly owned subsidiary."); *id.* at 24 ("Pursuant to Egyptian law, the Arbitrators rejected Oracle's defense that it was not a proper party to the arbitration.").

■ It is American federal arbitration law that controls. An American nonsignatory cannot be bound to arbitrate in the absence of a full showing of facts supporting an articulable theory based on American contract law or American agency law. *See Interbras Cayman Co. v. Orient Victory Shipping Co., S.A.,* 663 F.2d 4, 7 (2d Cir.1981) (district court committed error by not having a trial as to disputed facts regarding agency relationship).

To hold otherwise would defeat the ordinary and customary expectations of experienced business persons. The principal reason corporations form wholly owned foreign subsidiaries is to insulate themselves from liability for the torts and contracts of the subsidiary and from the jurisdiction of foreign courts. The practice of dealing through a subsidiary is entirely appropriate and essential to our nation's conduct of foreign trade.

### Conclusion

The judgment appealed from is vacated and the cause remanded to the district court to find as a fact whether Oracle agreed to arbitrate, by its actions or inac-

tion, or by reason of any action of Systems as to which Oracle clothed Systems with apparent or actual authority to consent on its behalf to arbitration, or on any other basis recognized by American contract law or the law of agency, and for further proceedings consistent with such finding.