10-4331-cv
Dedon GmbH v. Janus et Cie

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 6th day of January, two thousand eleven.

PRESENT:
        AMALYA L. KEARSE,
        RALPH K. WINTER,
        PETER W. HALL,
            *Circuit Judges*.

_____

Dedon GmbH and Dedon Inc.,

                *Plaintiffs-Appellees,*

      v.                                  10-4331-cv

Janus et Cie,

                *Defendant-Appellant.*

_____

FOR PLAINTIFFS-APPELLEES:      Andrew B. Bloomer (Hunter Murdock and Jeffrey K. Lamb, *on the brief*), Kirkland & Ellis LLP, New York, New York.

FOR DEFENDANT-APPELLANT:      James E. Berger, Paul Hastings LLP, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (McMahon, *J.*). **UPON DUE CONSIDERATION**, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**, that the judgment of the district court is **AFFIRMED**.

Janus et Cie ("Janus") appeals from the district court's decision denying its motion to compel Dedon GmbH and Dedon Inc. (collectively "Dedon") to arbitrate their dispute before the International Chamber of Commerce ("ICC") in London. Janus's arguments on appeal fall into two categories: (1) the district court erred in denying its motion to compel arbitration where the parties had an agreement to arbitrate, as evidenced by the draft exclusive distribution agreement or the standard terms and conditions that accompanied each purchase, and (2) the district court erred in holding that Dedon had not waived its right to object to arbitration through its conduct before the ICC. We assume the parties' familiarity with the underlying facts and procedural history of the case.

## I.    Discussion

The district court denied Janus's motion to compel arbitration, concluding it could not compel Dedon to arbitrate the exclusive distribution dispute without first determining whether such an agreement actually existed and that Dedon had not waived its right to object in court to the ICC arbitration. In addition, the district court declined to stay the proceedings during the pendency of the ICC arbitration and also determined that the issue of contract formation would proceed to a trial. We review a district court's denial of a motion to compel arbitration *de novo*. *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 26 (2d Cir. 2002).

2

A. Dispute Involving the Existence of the Contract

Janus first contends that the district court erred when it denied its motion to compel arbitration, arguing that it is within the arbitral panel's authority to determine its own jurisdiction, that Dedon had actually made that request to it, and that the court should have afforded the arbitral panel the opportunity to determine its own jurisdiction.

The Supreme Court recently reiterated that "[a]rbitration is strictly a matter of consent and thus 'is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.'" *Granite Rock Co. v. Int'l Bhd. of the Teamsters*, __ U.S. __, 130 S. Ct. 2847, 2857 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)) (internal quotation marks and citation removed and emphasis omitted). Accordingly, "courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* . . . its enforceability or applicability to the dispute is in issue." *Id.* at 2857-58. Where a party contests the issue of contract formation, therefore, "the court must resolve" the issue. *Id.* at 2858 (internal quotation marks removed).

*Granite Rock* reconfirms this circuit's well-established precedent that where a party challenges the very existence of the contract containing an arbitration clause, a court cannot compel arbitration without first resolving the issue of the contract's existence. *See, e.g.*, *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir. 1972) (holding that, where the party resisting arbitration denied the very existence of the agreement setting out the arbitration provision, the district court could not compel arbitration without holding a trial on the issue of the contract's formation). "If the making of the agreement to arbitrate is placed in issue—as [the party resisting arbitration] attempts to do by alleging that the contracts in which the arbitration provisions are found never came into existence—the court

3

must set the issue for trial." *Sphere Drake Ins. Ltd v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 30 (2d Cir. 2001). *See also Denney v. BDO Seidman LLP*, 412 F.3d 58, 68 (2d Cir. 2005) (noting that the Second Circuit rule in *Sphere Drake* "protect[s] parties from arbitration only in those narrowly-limited circumstances where the very existence of a contract is in doubt"); *Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003) ("[T]hough the presumption in favor of arbitration is strong, the law still requires that parties actually agree to arbitration before it will order them to arbitrate a dispute."); *Specht*, 306 F.3d at 26 ("It is well settled that a court may not compel arbitration until it has resolved 'the question of the very existence' of the contract embodying the arbitration clause.") (quoting *Interocean*, 462 F.2d at 676). We agree with the district court, therefore, that because the existence of the agreement containing an arbitration provision is in dispute, Dedon cannot be compelled to arbitration without first resolving that issue.

B.    <u>Waiver</u>

Although Janus raises multiple waiver "issues," they can be summarized as a single argument: that Dedon waived its right to object to arbitration—and waived its right to have the arbitrability issue decided by a court—when it made a voluntary request to the ICC to determine "that it is not *prima facie* satisfied that an arbitration agreement exists."

We agree with the district court that Dedon has not waived its right to object to arbitration of the dispute through its conduct before the ICC. Where a party repeatedly objects to arbitration, "[t]hese objections prevent a finding of waiver." *Opals on Ice*, 320 F.3d at 368. Furthermore, to the extent a party participates in an arbitration "in order to resolve the question of arbitrability itself, such participation does not constitute waiver." *Id.* at 369. "'[M]erely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate

4

that issue.'" *Id.* (quoting *First Options*, 514 U.S. at 946). *See also Sarhank Group v. Oracle Corp.*, 404 F.3d 657, 662 (2d Cir. 2005).

Nor did Dedon's request that the ICC's administrative arm decide that the dispute was non-arbitrable—for lack of an agreement between the parties to arbitrate—constitute a waiver by Dedon of the right to have that question decided by a court. Dedon's submissions to the ICC were replete with statements that Dedon disputed the ICC's jurisdiction; such repeated objections to ICC jurisdiction prevent a finding of waiver, *see First Options* and *Opals on Ice*.

*In re Arbitration Between Halcot Navigation Limited Partnership & Stolt-Nielsen Transportation Group ("Halcot")*, 491 F. Supp. 2d 413, 418-19 (S.D.N.Y. 2007), holding that a party had waived its right to object to an arbitration after it had submitted the question of arbitrability to the arbitration panel, does not persuade us to reach a different result. The facts of that case differ from those in the present case in several respects; and even if they did not, *Halcot*, as a district court decision, would not be binding on this Court.

### C. Terms & Conditions in Purchase Orders

Janus argues that an alternative basis for arbitrating the exclusive distribution dispute may be found in the terms and conditions that accompanied each purchase order between Dedon and Janus. That argument is not persuasive. On their face, the terms and conditions in those purchase orders govern the particular exchange of goods occurring with that purchase order—"[a]ll contractual and extra-contractual disputes *arising out of or in connection with contracts to which these International Terms and Conditions apply*, shall be finally resolved by arbitration" (emphasis added)—and do not purport to create or refer to any exclusive distribution relationship between the parties, which is the sole focus of the present suit.

5

Janus also argues that the exclusive distribution agreement should be encompassed within the meaning of "pre-contractual and collateral obligations" to the purchase orders. Janus would thus have this court find that "*any* dispute related to *any* obligation arising prior to or outside of the contract formed by each shipment of goods" is governed by the purchase orders' terms and conditions. (emphasis in original) We decline to adopt Janus's broad reading of that contractual language, as it ignores the plain language of the purchase order, and we agree with the district court that the terms and conditions do not provide an alternative basis for compelling arbitration.

D.   *Kahn Lucas*

Dedon argues that the district court did not go far enough in denying Janus's motion to compel without prejudice. It contends that, pursuant to *Kahn Lucas Lancaster, Inc. v. Lark International Ltd.*, 186 F.3d 210, 218 (2d Cir. 1999), *partially abrogated on other grounds by Sarhank*, 404 F.3d at 660 n.2, the district court should have denied the motion to compel *with* prejudice because it is undisputed that the contract containing the arbitration provision was never signed.

In *Kahn Lucas*, this court held that to be valid and enforceable, arbitration agreements governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3 (the "New York Convention"), which is enforceable under Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201-208, must be "signed by the parties or contained in an exchange of letters or telegrams." 186 F.3d at 218 (quoting Article II of the New York Convention). As this argument was not raised before the district court, the parties will have the opportunity to argue this issue at the trial on the existence

6

of a contract.  The district court may, of course, consider what effect, if any, our holding in *Kahn Lucas* has on any renewed motion to compel.

## II.    Conclusion

We have considered all of Janus's contentions on this appeal and have found them to be without merit.  The judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk