12-593-cv
VRG Linhas Aereas S.A. v. MatlinPatterson Global Opportunities Partners II L.P.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2012

(Argued: December 19, 2012      Decided: June 3, 2013)

Docket No. 12-593-cv

————————————————

VRG LINHAS AEREAS S.A.,

*Petitioner-Appellant,*

– v. –

MATLINPATTERSON GLOBAL OPPORTUNITIES PARTNERS II L.P.,
MATLINPATTERSON GLOBAL OPPORTUNITIES PARTNERS (CAYMAN) II L.P.,

*Respondents-Appellees.*

————————————————

Before: CALABRESI, LYNCH, and CHIN, *Circuit Judges.*

Appeal from an order and judgment of the United States District Court for the

Southern District of New York (Cedarbaum, *J.*), denying Petitioner-Appellant VRG Linhas

Aereas S.A.'s petition to confirm a Brazilian arbitral award against Repondents-Appellees

MatlinPatterson Global Opportunities Partners II L.P. and MatlinPatterson Global

Opportunities Partners (Cayman) II L.P. The district court decided that the parties' dispute

was beyond the scope of their arbitration agreement. It did so, however, without first

1

asking whether the parties had agreed to an arbitration clause that clearly and unmistakably assigns to an arbitral panel any questions about the scope of their arbitration agreement, if any. We therefore vacate the district court's judgment and remand for it to decide whether the parties so agreed.

VACATED and REMANDED for further proceedings.

DONALD FRANCIS DONOVAN (Carl Micarelli, Debevoise & Plimpton LLP; Richard I. Werder, Jr., William B. Adams, and Elizabeth M. Devaney, Quinn Emanuel Urquhart & Sullivan, LLP, *on the brief*), Debevoise & Plimpton LLP, New York, N.Y., *for Petitioner-Appellant.*

ROBERT H. SMIT (Tyler B. Robinson, Juan A. Arteaga, and Michelle Hertz, *on the brief*), Simpson Thacher & Bartlett LLP, New York, N.Y., *for Respondents-Appellees.*

_____

CALABRESI, *Circuit Judge*:

After receiving an arbitral award against Respondents-Appellees MatlinPatterson Global Opportunities Partners II L.P. and MatlinPatterson Global Opportunities Partners (Cayman) II L.P. (collectively "MatlinPatterson"), Petitioner-Appellant VRG Linhas Aereas S.A. ("VRG") filed a petition in the Southern District of New York seeking confirmation of the award in accordance with the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"). 9 U.S.C. §§ 201-08. MatlinPatterson argued in response, as it had in arbitration and court proceedings in Brazil, that the Arbitral Tribunal administered by the International Court of Arbitration of the International Chamber of Commerce ("ICC") lacked jurisdiction over its dispute with

2

VRG. The district court (Cedarbaum, *J.*) issued an oral ruling agreeing with MatlinPatterson and thereafter denied VRG's petition by handwritten endorsement.

On appeal, VRG argues that the district court usurped the Arbitral Tribunal's role when it decided that the scope of the parties' arbitration agreement—assuming there was one—did not extend to the dispute at hand. The question of *who* is to decide whether a dispute is arbitrable is one that must necessarily precede the question of *whether* a dispute is arbitrable. We therefore vacate the district court's judgment and remand so that it may decide, in the first instance and on the particular facts of this case, who—the court or the Arbitral Tribunal—has the power to determine the scope of the alleged arbitration agreement between VRG and MatlinPatterson. As we describe more fully below, this power—to determine the scope of any agreement to arbitrate—is to remain with the district court unless the parties agreed to an arbitration clause that clearly and unmistakably assigns such questions to arbitration.

## BACKGROUND

MatlinPatterson is a private equity fund based in New York; VRG, based in São Paulo, Brazil, is a subsidiary of Gol Linhas Aereas Inteligentes S.A. ("Gol"), a Brazilian airline. Gol—through a subsidiary, GTI—acquired VRG in 2007 from two of MatlinPatterson's indirect subsidiaries, Varig Logistica S.A. and Volo do Brasil S.A. The transaction was accomplished through a Share Purchase and Sale Agreement ("the Agreement"), written in Portuguese, and signed on March 28, 2007 by all of the entities just mentioned but one: MatlinPatterson.

Six Addenda to the Agreement were also executed, including one (Addendum 5) that MatlinPatterson did sign, and that gives rise to the dispute before us. In Addendum 5, a one-page document also signed by GTI and Gol, MatlinPatterson agreed not to compete with VRG or invest in any of its competitors in the passenger airline market for a period of three years. Addendum 5 did not mention arbitration. The parties sharply dispute, however, whether the signatories to Addendum 5 agreed to incorporate the arbitration provisions detailed in **§ 14** of the main Agreement.[1] Their dispute turns in part on divergent translations of a phrase that appears at the end of Addendum 5, describing that document as "*aditando os termos do Contrato*"—that is, "amending" (VRG's translation) or "supplementing" (MatlinPatterson's) the terms of the main Agreement.

Soon after the sale of VRG, a dispute arose over an adjustment to the purchase price. In December 2007, VRG referred the dispute to arbitration, naming MatlinPatterson as a party. Over the latter's objections, the three-member Arbitral Tribunal appointed under ICC rules unanimously determined, after briefing and a two-day hearing, that MatlinPatterson had agreed to arbitration and—though the panel divided on this question—that its agreement to arbitrate encompassed the parties' purchase price dispute. Following a subsequent three-day hearing on the merits of that dispute, the Tribunal, in September 2010, unanimously issued its award holding MatlinPatterson liable for damages resulting from fraudulent misrepresentations it made during the sale of VRG. MatlinPatterson has challenged the arbitral award in the Brazilian courts, so far unsuccessfully.

---

[1] Section 14 of the Agreement included provisions requiring that "disputes arising from or related to this Agreement, including those concerning its validity, effectiveness, breach, [and] interpretation" be submitted to the ICC International Court of Arbitration.

The present case arose in January 2011, when VRG filed a petition in the Southern District of New York for confirmation of its foreign arbitral award against MatlinPatterson, in accordance with the New York Convention, 9 U.S.C. § 207. As it had in Brazil, MatlinPatterson argued in the district court that the Arbitral Tribunal lacked jurisdiction over its dispute with VRG. The district court agreed, ruling from the bench that even if MatlinPatterson had agreed to arbitrate disputes over its noncompete agreement with VRG, it had not agreed to arbitrate what the district court described as "an entirely different issue [arising] under an agreement that it did not sign." VRG now appeals the district court's denial of its petition.

## DISCUSSION

We review a district court's legal interpretations of the New York Convention as well as its contract interpretation *de novo*; findings of fact are reviewed for clear error. *See Fishoff v. Coty Inc.*, 634 F.3d 647, 652 (2d Cir. 2011); *Sarhank Grp. v. Oracle Corp.*, 404 F.3d 657, 659 (2d Cir. 2005); *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 89 (2d Cir. 2005).

Under the New York Convention, as implemented and codified at 9 U.S.C. § 207, a party may petition a United States district court to confirm a foreign arbitral award that the party received within the previous three years. The court is to confirm the award unless it finds one of the seven grounds for refusal offered in Article V of the Convention. "Given the strong public policy in favor of international arbitration," the party seeking to avoid summary confirmance of an arbitral award has the heavy burden of proving that one of the seven defenses applies. *Encyclopaedia Universalis*, 403 F.3d at 90.

5

Among its provided defenses, the Convention allows courts to refuse to recognize a foreign arbitral award if "[t]he subject matter of the difference is not capable of settlement by arbitration under the law of" the county in which enforcement is sought. New York Convention, art. V(2)(a), June 10, 1958, 21 U.S.T. 2517. Whether a given dispute is arbitrable—and the resulting award enforceable—is therefore a question to be decided under United States arbitration law. So too is the logically prior question of *who* shall decide a dispute's arbitrability. *See Sarhank Grp.*, 404 F.3d at 661.

The Supreme Court helpfully distinguished these inquiries from each other, and from yet a third question, in *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995). As the *First Options* Court explained, the three questions involve: 1) the merits of the dispute; 2) whether the dispute is to be arbitrated—the so called "question of arbitrability"; and 3) whether a court or an arbitrator is to decide the question of arbitrability. In regard to Question Three, *First Options* holds that questions of arbitrability are to be sent to arbitration if and only if the parties clearly and unmistakably expressed their intention to do so.[2] *Id.* at 945; *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).

---

[2] We have previously noted that "'[q]uestions of arbitrability' is a term of art covering disputes about [1] whether the parties are bound by a given arbitration clause as well as disagreements about [2] whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Republic of Ecudaor v. Chevron Corp.*, 638 F.3d 384, 393 (2d Cir. 2011) (quotation marks and alterations omitted). Both disputes—about which parties and which types of controversy the clauses of an arbitration agreement encompass—are ones over the arbitration agreement's *scope*. "Those issues should be decided by the courts unless there is clear and unmistakable evidence from the arbitration agreement that the parties intended that they be decided by the arbitrator." *Id.* (quotation marks and alterations omitted). The more basic issue, however, of whether the parties agreed to arbitrate in the first place is one only a court can answer, since in the absence of any arbitration agreement at all, "questions of arbitrability" could hardly have been clearly and unmistakably given over to an arbitrator.

Of course, a court asked to confirm an arbitral award must take the three *First Options* questions in reverse order, since Question Three asks who will answer Question Two (the question of arbitrability), and Question Two in turn asks who will answer Question One (the decision on the merits). *See Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 122 (2d Cir. 2006) (describing the "issue of *who* will decide the arbitrability question" as "preliminary" to the question "whether the claims *must* be arbitrated"). Thus a court must begin by deciding whether the parties before it clearly and unmistakably committed to arbitrate questions regarding the scope of their arbitration agreement. If—but only if—the answer is *no*, the court must then proceed to determine on its own whether the parties' dispute falls within the scope of their agreement to arbitrate.

The instant case shows how this initial question can sometimes prove determinative, however "narrow" or "arcane" it might be. *First Options*, 514 U.S. at 942, 945. Had the district court found that MatlinPatterson and VRG clearly and unmistakably agreed to arbitrate questions of arbitrability, the district court's work would then have been done. Since the Arbitral Tribunal has already decided that the parties' dispute falls within the scope of their arbitration agreement, the district court would have had to defer to the Arbitral Tribunal's answer not only to that question but also, consequently, to the Tribunal's ruling on the merits. Barring any other defenses, the district court would have been required to recognize and enforce the Tribunal's award.

On the record before us, however, it does not seem that the district court ever asked the initial question of who is to decide the scope of the parties' arbitration agreement. The district court held that *even if* MatlinPatterson had agreed to arbitrate

7

disputes over its noncompete provision—a question the court said it did not "have to get drawn into"—the parties' arbitration agreement surely did not extend to disputes over the purchase price of VRG. In so holding, the district court decided the scope of an agreement whose existence it assumed *arguendo*, instead of determining whether the parties *actually* reached an agreement to arbitrate and, if so, whether it included a clear and unmistakable intention to arbitrate questions concerning the agreement's scope. By vacating and remanding, we give the district court the opportunity to make this determination in the first instance.

On remand, the district court's task should be simplified by this Court's prior holding in *Shaw Group Inc. v. Triplefine International Corp.*, 322 F.3d 115, 122 (2d Cir. 2003), in which we held that an arbitration clause subjecting disputes to the rules and procedures of the ICC International Court of Arbitration clearly and unmistakably commits to arbitration any questions about the arbitrability of particular disputes. Section 14 of the Agreement does exactly this. Therefore, if the district court determines that MatlinPatterson agreed to the terms of § 14, our precedent compels the conclusion that MatlinPatterson thereby clearly and unmistakably committed questions of scope to the arbitrators. Because the Arbitral Tribunal has already determined that the subject matter of this dispute falls within the scope of § 14, the district court's finding would require it to confirm the arbitral award.

If, on the other hand, the district court determines that MatlinPatterson did *not* agree to the terms of § 14, no further analysis would be necessary. Such a finding would compel the denial of VRG's petition to confirm the award on the grounds that

8

MatlinPatterson never consented to submit disputes—whether about arbitrability or anything else—to arbitration.

In analyzing whether MatlinPatterson agreed to the terms of § 14, the district court does not necessarily need to discern that agreement in unambiguous contract language. "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary . . . principles that govern the formation of contracts," *First Options*, 514 U.S. at 944, including the consideration of extrinsic evidence to resolve ambiguities in contractual language.[3] In the present case, the district court might—we do not say will—find it necessary to consider extrinsic evidence as it carries out its primary task on remand: determining whether MatlinPatterson agreed to be bound by the arbitration clause in the Agreement.

## CONCLUSION

Because the district court has not yet determined whether the parties in this case agreed to an arbitration clause that clearly and unmistakably entrusted questions of arbitrability to the Arbitral Tribunal rather than to the court, its judgment is VACATED and the case REMANDED in order to provide the district court an opportunity to make this determination in the first instance, and, consistent with this opinion, to conduct whatever further proceedings may be required.

---

[3] The parties are in agreement that the standard principles of contract interpretation are no different under Brazilian law than under our own.