(Docs. 8, 9, 19, 27)
Geoffrey W. Crawford, Chief Judge United States District
This case concerns a dispute over an agreement to invest $5,000,000 in a start-up company called GeneThera, Inc. ("GeneThera"), which seeks to develop the use of genetic technology in medicine. There is no dispute that plaintiff Fredric Oeschger created a single purpose entity called FOGT, LLC ("FOGT") for the purpose of investing in GeneThera. It is also undisputed that FOGT signed an agreement to invest in GeneThera and that the agreement contains an arbitration clause providing for arbitration in Colorado and delegating issues of arbitrability to the arbitrator. FOGT and GeneThera are currently involved in an arbitration proceeding captioned In re: GeneThera, Inc. v. FOGT, LLC , Case No. 01-19-0000-5391 (the "Arbitration"). The principal issue before this court is whether Mr. Oeschger must arbitrate the separate claim that he is personally liable for the obligations of FOGT because FOGT functioned as his alter ego.
Mr. Oeschger has filed a complaint in this court against GeneThera seeking a declaration: "(i) that he is not liable to GeneThera or its shareholders for any actions or failures to act in the capacity of a member of the Board of Directors of GeneThera, and (ii) that he is not personally liable on obligations, if any, owed by FOGT, LLC to GeneThera, or otherwise."
*379 (Doc. 7 ¶ 5.) Mr. Oeschger also seeks "preliminary and permanent injunctive relief precluding GeneThera from taking actions to compel him to arbitrate in the Arbitration any of the claims that are the subject of this judicial action." (Id. )
Multiple motions are currently pending. The court held a hearing on April 9, 2019 and ordered expedited briefing on the three recently filed motions: Mr. Oeschger's April 2, 2019 motion for a preliminary injunction staying the Arbitration (Doc. 4); GeneThera's April 8, 2019 motion to dismiss for lack of subject matter and personal jurisdiction, motion to transfer, or motion to stay (Doc. 8); and GeneThera's April 8, 2019 emergency motion to stay and vacate the hearing (Doc. 9). The court entered a temporary restraining order (TRO) on April 11, 2019 enjoining GeneThera from taking any action in furtherance of the prosecution of the Arbitration or enforcing the emergency arbitrator's April 10, 2019 order compelling Mr. Oeschger to arbitrate the claims against him and to make an immediate payment of $25,186.50 to GeneThera. (Doc. 16.)
Briefing is now complete on the three motions listed above. In addition, GeneThera filed an April 12, 2019 motion to dissolve the TRO. (Doc. 19.) Mr. Oeschger filed a conditional motion for limited jurisdictional discovery and a motion for extension of the TRO on April 18, 2019. (Doc. 27.)
Background
GeneThera and FOGT entered into a "Milestones Investment Agreement" ("MIA") on March 1, 2018. (Doc. 8-4 at 3.) Mr. Oeschger's signature appears on the agreement as "Manager" of FOGT. (Id. at 10.) In a provision regarding the "governing law," the MIA states, in pertinent part: "The parties hereto hereby submit to the exclusive jurisdiction of the United States federal courts located in Denver, Colorado with respect to any dispute arising under this agreement ...." (Id. at 6.)
The agreement also includes the following provision: "Any claim or controversy arising out of or relating to the performance of this Agreement, which has not been settled by mediation, shall be settled by arbitration in Denver, Colorado, in accordance with the Commercial Arbitration Rules of the American Arbitration Association [AAA], as herein amended." (Id. at 9.) The relevant AAA arbitration rules include the following provisions:
R-7. Jurisdiction
(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.
(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.
American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, Rule 7 (amended and effective Oct. 1, 2013).
On or about February 19, 2019, GeneThera filed a demand against FOGT for arbitration in Colorado with the AAA. (See Doc. 8-1 ¶ 9.) In an order entered on March 8, 2019, an emergency arbitrator found that GeneThera had a reasonable probability of success on its contract claim. (Doc. 8-13 at 3.) The emergency arbitrator found that GeneThera had presented undisputed evidence that FOGT had refused to make a $1.2 million payment under the *380 MIA, and that GeneThera was accordingly unable to pay $25,186.50 in rent under a lease. (See id. at 3-4.) The emergency arbitrator found that if FOGT "is not held to its obligations under the MIA, Claimant will become insolvent and be forced to close its doors, resulting in catastrophic loss that cannot be remedied by money alone." (Id. ) The emergency arbitrator enjoined FOGT from breaching the MIA and ordered it to immediately pay $25,186.50 to GeneThera so that GeneThera could satisfy its rent obligations. (Id. at 4.)
GeneThera submitted a First Amended Demand for Arbitration to the AAA on or about March 12, 2019. (Doc. 8-14.) The demand named FOGT as the sole respondent. The First Amended Demand added a new claim for "Piercing the Corporate Veil / Alter Ego," alleging that FOGT is the alter ego of Mr. Oeschger and asserting that Mr. Oeschger is personally liable for GeneThera's alleged damages. (Id. at 9-10.)
FOGT filed for bankruptcy under Chapter 7 on March 15, 2019. (See Doc. 8-16 at 3.) Mr. Oeschger filed his complaint in the district court on March 18, 2019. (Doc. 1.) Then, in the bankruptcy action, GeneThera filed an emergency motion for relief from the automatic stay on March 22, 2019. (Doc. 8-16 at 1.) GeneThera submitted a Second Amended Demand for Arbitration to the AAA on or about March 22, 2019. (Doc. 8-15.) The Second Amended Demand was "to add Respondent Fred Oeschger as a captioned party and to clarify Claimant's claims against Respondent Fred Oeschger individually." (Id. at 2.) In an order dated April 5, 2019, the Bankruptcy Court granted GeneThera relief from the automatic stay so that it could pursue its claims in the Arbitration. (Doc. 8-18 at 2.)
Having been granted relief from the automatic stay, GeneThera returned to the Arbitration and requested emergency injunctive relief against Mr. Oeschger. (See Doc. 14-3 at 2.) In an order dated April 9, 2019, the emergency arbitrator found as follows:
In light of Mr. Oeschger's control of FOGT, its thin capitalization, its representations to Claimant that it had the resources to meet its obligations to Claimant, Mr. Oeschger's knowledge of those representations, and financial transactions in which the interests of Mr. Oeschger and FOGT were not kept separate, the Arbitrator concludes that Claimant has a reasonable probability of success on the merits of its alter ego claims against Mr. Oeschger.
(Doc. 14-3 at 2-3.) The arbitrator accordingly amended the March 8, 2019 order "to include Fred Oeschger as a Respondent" and ordered that Mr. Oeschger "immediately pay $25,186.50 to Claimant so that Claimant may satisfy its rent obligations under the Lease." (Id. at 3.) This court issued its TRO on April 11, 2019, enjoining enforcement of the arbitrator's April 9, 2019 order. (Doc. 16.)
Analysis
I. Emergency Motion to Stay and Vacate Hearing (Doc. 9)
GeneThera filed an emergency motion (Doc. 9) to stay or vacate the hearing on Mr. Oeschger's motion for a preliminary injunction (Doc. 4). In that emergency motion, GeneThera argues that the court cannot enter a preliminary injunction without subject matter and personal jurisdiction and without finding that Vermont is a proper venue. In opposition, Mr. Oeschger maintains that the court can address GeneThera's motion to dismiss and Mr. Oeschger's motion for injunctive relief concurrently. (Doc. 22 at 1.) In reply, GeneThera notes that the emergency motion is moot insofar as the court already held a hearing on April 9, 2019. (Doc. 24 at 1.) As to the *381 order in which the court should address the pending motions, GeneThera maintains that the court cannot enter any injunctive relief without first deciding that subject matter jurisdiction, personal jurisdiction, and venue are present. (Id. )
The court concludes that the emergency motion is moot insofar as it sought to stay the April 9, 2019 hearing. The court addresses the dispute over the order of operations below.
II. Subject Matter Jurisdiction (Doc. 8)
GeneThera seeks dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), and for improper venue under Fed. R. Civ. P. 12(b)(3). Alternatively, GeneThera moves for transfer of this action to Colorado or to stay the action pending completion of the AAA arbitration. (See Doc. 8.) The court begins its analysis with the question of subject matter jurisdiction.
"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it ....' " Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L. , 790 F.3d 411, 417 (2d Cir. 2015) (quoting Makarova v. United States , 201 F.3d 110, 113 (2d Cir. 2000) ). Where a Rule 12(b)(1) motion is "facial"-i.e., "based solely on the allegations of the complaint or the complaint and exhibits attached to it"-the plaintiff has no evidentiary burden in opposing the motion. Carter v. HealthPort Techs., LLC , 822 F.3d 47, 56 (2d Cir. 2016). The court's task is to determine whether the pleadings allege "facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." Id. (alteration in original) (quoting Amidax Trading Grp. v. S.W.I.F.T. SCRL , 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)). In ruling on a facial Rule 12(b)(1) motion, the court must accept as true all material allegations of the complaint and must construe the complaint in favor of the plaintiff. See ids="5873317" index="5" url="https://cite.case.law/f3d/671/140/#p145">id.
GeneThera asserts that Mr. Oeschger lacks standing to assert his declaratory judgment claims because he is not a party to the MIA or a third-party beneficiary under the MIA. (See Doc. 8 at 11.) Mr. Oeschger maintains that he has standing because "being compelled to arbitrate a claim one did not agree to arbitrate constitutes an irreparable harm for which there is no adequate remedy at law." (Doc. 20 at 21.) In its reply, GeneThera asserts that Mr. Oeschger has not addressed the argument that he lacks standing to seek a declaration under the MIA. (Doc. 26 at 4.) As to Mr. Oeschger's claim for injunctive relief precluding GeneThera from taking actions to compel him to arbitrate, GeneThera argues that the question of whether Mr. Oeschger must arbitrate is a question of arbitrability to be decided by the AAA arbitrator rather than the court. (Id. at 6-7.)
A. The Court Decides Whether a Non-Signatory is Subject to an Arbitration Provision
Generally, an "arbitrability" question is a dispute over whether an arbitration agreement "applies to the particular dispute." Henry Schein, Inc. v. Archer & White Sales, Inc. , --- U.S. ----, 139 S. Ct. 524, 527, 202 L.Ed.2d 480 (2019). Under the Federal Arbitration Act (FAA) and Supreme Court cases, "the question of who decides arbitrability is itself a question of contract." Id. "The Act allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." Id. "[P]arties may delegate threshold arbitrability questions to *382 the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." Id. at 530 (quoting First Options of Chicago, Inc. v. Kaplan , 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) ).
Here, the MIA explicitly incorporated the AAA Commercial Arbitration Rules, including Rule 7. Incorporation in that manner would ordinarily "serve[ ] as clear and unmistakable evidence of the parties' intent to delegate such issues [issues of arbitrability] to an arbitrator." Contec Corp. v. Remote Solution Co. , 398 F.3d 205, 208 (2d Cir. 2005). But Mr. Oeschger asserts that the delegation of arbitrability issues to the arbitrator is not so clear in this case because the MIA is internally inconsistent insofar as it includes the provision under which the parties submit to the jurisdiction of the federal court in Colorado "with respect to any dispute arising under this agreement." (Doc. 8-4 at 6.)
The court rejects that argument. As other courts have reasoned:
No matter how broad the arbitration clause, it may be necessary to file an action in court to enforce an arbitration agreement, or to obtain a judgment enforcing an arbitration award, and the parties may need to invoke the jurisdiction of a court to obtain other remedies. It is apparent that the venue provision here was intended for these purposes, and to identify the venue for any other claims that were not covered by the arbitration agreement.
Mumin v. Uber Techs., Inc. , 239 F. Supp. 3d 507, 523 (E.D.N.Y. 2017) (internal quotation marks omitted) (quoting Mohamed v. Uber Techs., Inc. , 848 F.3d 1201, 1209-10 (9th Cir. 2016) ). Thus the signatories to the MIA-GeneThera and FOGT-are the "parties" to that agreement and are clearly bound to arbitrate issues of arbitrability. The more difficult question is whether the arbitrator is also empowered to decide whether non-signatory Mr. Oeschger is required to arbitrate on alter ego grounds.
Cases in the Second Circuit and elsewhere present this issue in two ways. There are cases in which a non-signatory seeking to compel arbitration by a signatory seeks to submit the question of arbitrability to the arbitrators. In such a case, upon a showing of a sufficient relationship between the parties, the arbitration panel decides the question of arbitrability. See Contec , 398 F.3d at 211 ("We therefore conclude that as a signatory to a contract containing an arbitration clause and incorporating by reference the AAA Rules, [the signatory] cannot now disown its agreed-to obligation to arbitrate all disputes, including the question of arbitrability.").
The converse is not true. When the signatory seeks to compel a non-signatory to submit the issue of arbitrability to arbitration, it is the court-not the arbitrators-which resolves the issue of arbitrability. See Charity Folks Inc. v. Kim , 757 F. Supp. 2d 378, 380 & n.3 (S.D.N.Y. 2010) (collecting cases recognizing that the issue of alter ego status is typically a "threshold question of arbitrability" to be decided by a court because "the alleged alter ego claimed that it was not an alter ego and therefore was not subject to the agreement to arbitrate"); Local Union No. 38, Sheet Metal Workers Int'l Ass'n, AFL-CIO v. A & M Heating, Air Conditioning, Ventilation & Sheet Metal, Inc. , 314 F. Supp. 2d 332, 344 (S.D.N.Y. 2004) ("Whether A&M Heating is Hudson Heating's alter ego and therefore bound by the arbitration clause contained in Hudson Heating's CBA is exactly the type of 'gateway' issue that is a 'question of arbitrability' for this Court to decide.").
This conclusion is consistent with the Supreme Court's recognition that "before *383 referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." Henry Schein , 139 S. Ct. at 530 (emphasis added) (citing 9 U.S.C. § 2 ). As the Supreme Court observed, "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." Id. (emphasis added). The Second Circuit has recognized the same principle: it is a job for a court, in the first instance, to determine whether the parties agreed to arbitrate. See Meyer v. Uber Techs., Inc. , 868 F.3d 66, 73 (2d Cir. 2017) ("[B]efore an agreement to arbitrate can be enforced, the district court must first determine whether such agreement exists between the parties."); Sarhank Grp. v. Oracle Corp. , 404 F.3d 657, 661 (2d Cir. 2005) ("[A]rbitrability is not arbitrable in the absence of the parties' agreement."); Smith/Enron Cogeneration Ltd. P'Ship, Inc. v. Smith Cogeneration Int'l, Inc. , 198 F.3d 88, 95 (2d Cir. 1999) ("[A] court must first decide whether the parties agreed to arbitrate." (internal quotation marks omitted)).
That judicial determination-whether the parties agreed to arbitrate-includes deciding "whether an entity is a party to the arbitration agreement." Smith/Enron , 198 F.3d at 95 ; see also Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Custom Air Sys., Inc. , 357 F.3d 266, 268 (2d Cir. 2004) (per curiam) ("[A]rbitrability vis a vis a non-signatory is for the district court to decide." (citing AT & T Techs., Inc. v. Commc'ns Workers of Am. , 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) )); Boroditskiy v. European Specialties LLC , 314 F. Supp. 3d 487, 493 (S.D.N.Y. 2018) ("[I]n cases where a party disputes whether 'it is bound to an arbitration agreement, the issue of arbitrability is for the Court in the first instance.' " (quoting Di Martino v. Dooley , No. 08 Civ. 4606(DC), 2009 WL 27438, at *4 (S.D.N.Y. Jan. 6, 2009) )).
The cases that GeneThera cites do not compel a contrary conclusion. The Second Circuit in Schneider v. Kingdom of Thailand stated : " 'Question[ ] of arbitrability' is a term of art covering 'dispute[s] about whether the parties are bound by a given arbitration clause' [i.e., formation] as well as 'disagreement[s] about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy' [i.e., scope]." 688 F.3d 68, 71 (2d Cir. 2012) (alterations in original) (quoting Republic of Ecuador v. Chevron Corp. , 638 F.3d 384, 393 (2d Cir. 2011) ). The parties to an arbitration agreement can certainly delegate resolution of those issues to an arbitrator. Republic of Ecuador , 638 F.3d at 393. "The more basic issue, however, of whether the parties agreed to arbitrate in the first place is one only a court can answer, since in the absence of any arbitration agreement at all, 'questions of arbitrability' could hardly have been clearly and unmistakably given over to an arbitrator." VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P. , 717 F.3d 322, 325 n.2 (2d Cir. 2013).
First Options of Chicago, Inc. v. Kaplan , 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), is also not to the contrary, and in fact supports Mr. Oeschger's position. In that case, First Options of Chicago, Inc. had signed an agreement to arbitrate with MK Investments, Inc. ("MKI"). MKI accepted arbitration, but the individual who wholly owned MKI, Manuel Kaplan, and Mr. Kaplan's wife, Carol Kaplan, did not personally sign the agreement. The Kaplans denied that their dispute with First Options was arbitrable and filed written objections with the arbitration panel.
*384 First Options , 514 U.S. at 940-41, 115 S.Ct. 1920. "The arbitrators decided that they had the power to rule on the merits of the parties' dispute, and did so in favor of First Options." Id. at 941, 115 S.Ct. 1920. The district court confirmed the award, but the Third Circuit agreed with the Kaplans that their dispute was not arbitrable, and reversed the district court's confirmation of the award against them. Id.
The Supreme Court affirmed the Third Circuit's judgment. In the course of its analysis, the Supreme Court stated that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." Id. at 944, 115 S.Ct. 1920 (second and third alterations in original) (quoting AT & T Techs. , 475 U.S. at 649, 106 S.Ct. 1415 ). Seizing on that language, GeneThera asserts that, as long as they do so clearly and unmistakably, parties can delegate to arbitrators the question of whether non-signatories are bound to arbitrate. (See Doc. 26 at 6-7.) But the Kaplans were not parties to the agreement, and the Supreme Court concluded that First Options could not show that they "clearly agreed to have the arbitrators decide (i.e. , to arbitrate) the question of arbitrability" posed in that case. First Options , 514 U.S. at 946, 115 S.Ct. 1920.
Here, there is similarly no evidence that Mr. Oeschger agreed to have the AAA arbitrator decide whether he is the alter ego of FOGT. As the Supreme Court has stated, First Options held "that a court should decide whether the arbitration contract bound parties who did not sign the agreement." Howsam v. Dean Witter Reynolds, Inc. , 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). The same holds true in this case. For the reasons stated above, that conclusion holds true in this case regarding Mr. Oeschger.
B. Standing as to Remaining Claims
In his declaratory judgment claims, Mr. Oeschger seeks a declaration that he is not personally liable for any actions or omissions as a GeneThera board member. He also requests a declaration that he is "not personally liable to Defendant for any obligations of FOGT, LLC, if any, under the agreement it is alleged to have with GeneThera ." (Doc. 7 at 14 (emphasis added).) GeneThera argues that Mr. Oeschger-a non-party to the MIA-lacks standing to seek a declaration of rights under the MIA. (Doc. 8 at 13.) Mr. Oeschger maintains that the claims he asserts do not "originate with the agreement GeneThera seeks to enforce." (Doc. 20 at 19.) Rather, according to Mr. Oeschger, he is advancing "non-contract, declaratory claims based on his right under Vermont's limited liability statute to be protected from any liabilities of FOGT, and under corporation law that controls if he was ever a valid director of GeneThera, subject to claims against him arising out of that disputed status." (Id. at 20.) GeneThera replies that Mr. Oeschger's position is incompatible with his request for a declaration that he is not personally liable under the alleged agreement. (Doc. 26 at 5 & n.2.)
Generally, nonparties to contracts lack standing to assert nonperformance of those contracts. Rajamin v. Deutsche Bank Nat'l Trust Co. , 757 F.3d 79, 88 (2d Cir. 2014) ; see also In re Motors Liquidation Co. , 580 B.R. 319, 342 (Bankr. S.D.N.Y. 2018) ("Non-parties to a contract ordinarily do not have a 'concrete and particularized injury.' "). But as the court understands Mr. Oeschger's declaratory claims, he is not asserting nonperformance of the MIA, but is instead seeking a declaratory judgment that he has no liability under the MIA. The court can discern no obstacle to standing for such a claim. See *385 Safenet, Inc. v. Uniloc USA, Inc. , No. 6:15-CV-97-RWS-KNM, 2015 WL 7272196, at *2 (E.D. Tex. Nov. 17, 2015) ("It would seem convoluted to require a declaratory-judgment plaintiff to plead facts that would show their liability when the exact purpose of the declaratory action is to state that there is no liability.").
III. Personal Jurisdiction (Docs. 8, 19, 27)
GeneThera also seeks dismissal for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). The court may determine a Rule 12(b)(2) motion on the basis of pleadings and affidavits alone, or it may permit discovery, or it may conduct an evidentiary hearing. Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A. , 722 F.3d 81, 84 (2d Cir. 2013) (per curiam). Mr. Oeschger believes that his submissions establish a reasonable likelihood that he will prevail on the question of personal jurisdiction but has also filed a "conditional" motion for limited jurisdictional discovery in the event that the court disagrees on that point. (Doc. 27.) He also seeks an extension of the TRO "to preserve the status quo during such discovery." (Id. at 1.) Meanwhile, GeneThera has filed a motion to dissolve the TRO under Fed. R. Civ. P. 65(b)(4), arguing that it is improper for the court to grant interlocutory injunctive relief without subject matter or personal jurisdiction. (Doc. 19.)
The court grants Mr. Oeschger's motion for limited discovery (Doc. 27) on the issue of personal jurisdiction. The court is unwilling to decide that issue on a contingent basis in which the court's choices are to deny the motion or permit discovery. The court denies GeneThera's motion to dissolve the TRO (Doc. 19). Other courts have extended TROs to allow time for expedited jurisdictional discovery. See Display Works, LLC v. Bartley , 182 F. Supp. 3d 166, 171 (D.N.J. 2016) ; Delta Sigma Theta Sorority Inc. v. Bivins , 20 F. Supp. 3d 207, 210 (D.D.C. 2014).
GeneThera argues that the TRO is invalid because it does not require Mr. Oeschger to post any security under Fed. R. Civ. P. 65(c). (See Doc. 19 at 13.) According to GeneThera, Mr. Oeschger's position is that security in the amount of $25,186.50 is sufficient. (Id. ) But GeneThera maintains that that sum "ignores the painful reality that faces GeneThera-i.e., if the TRO is not dissolved immediately, then GeneThera will be evicted from its laboratory space (the second milestone) and fall out of SEC compliance (the third milestone entitling GeneThera to the $1.2 million that Oeschger refused to pay)." (Id. ) GeneThera asserts that those events would cause it to cease to exist and be unable to "meet the fourth and fifth milestones in the MIA that would entitle it to the full additional $4.45 million that Oeschger committed to invest under the MIA." (Id. )
Mr. Oeschger asserts that the eviction proceeding has been continued to May 10, 2019, and that GeneThera has supplied no credible evidence that it is on the brink of eviction. (Doc. 23 at 10.) The court requires additional evidence before it can find that any security is proper under Fed. R. Civ. P. 65(c). GeneThera is accordingly granted seven days to file evidence and a proposal to modify the TRO to include a security provision. Mr. Oeschger is granted seven days to respond.
Conclusion
Defendant's Emergency Motion to Stay and Vacate Hearing (Doc. 9) is MOOT.
Defendant's Motion to Dismiss (Doc. 8) is DENIED insofar as it seeks dismissal for lack of subject matter jurisdiction. The court RESERVES ruling on the remaining issues in the motion pending completion of jurisdictional discovery as described below.
Defendant's Motion to Dissolve the TRO (Doc. 19) is DENIED. The court requires additional evidence before it can find that *386 any security is proper under Fed. R. Civ. P. 65(c). GeneThera is accordingly granted seven days to file evidence and a proposal to modify the TRO to include a security provision. Mr. Oeschger may respond within seven days from the filing of GeneThera's proposal.
Plaintiff's Conditional Motion for Limited Jurisdictional Discovery and Motion for Extension of TRO (Doc. 27) is GRANTED. The original TRO (Doc. 16) states the reasons for its issuance and the acts it restrains; the TRO is extended and shall remain in effect until July 24, 2019. The court allows 30 days for jurisdictional discovery so that the question of personal jurisdiction can be answered once on a complete factual record. Any additional memorandum must be filed within 45 days from today and any response from defendant within 60 days. At that point, the court will rule expeditiously on the question of personal jurisdiction.