**ENCYCLOPAEDIA UNIVERSALIS S.A., Plaintiff–Appellant,**

v.

**ENCYCLOPAEDIA BRITANNICA, INC., Defendant–Appellee.**

**Docket No. 04–0288–CV.**

United States Court of Appeals, Second Circuit.

Argued: Oct. 19, 2004.

Decided: March 31, 2005.

Jennifer L. Marlborough, Wormser, Kiely, Galef & Jacobs LLP, New York, N.Y. (John T. Morin, on the brief), for Plaintiff–Appellant Encyclopaedia Universalis S.A.

Todd R. Geremia, Jones Day, New York, N.Y. (Fredrick E. Sherman, on the brief) for Defendant–Appellee Encyclopaedia Britannica, Inc.

Before: MESKILL, SACK, and B.D. PARKER, Circuit Judges.

B.D. PARKER, Jr., Circuit Judge.

Encyclopaedia Universalis S.A. ("EUSA") appeals from a judgment of the United States District Court for the Southern District of New York (Scheindlin, *J.*) denying its motion to confirm an arbitration award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 ("New York Convention"). EUSA brought suit against Encyclopaedia Britannica, Inc. ("EB") to en-

force the award of an arbitral board in Luxembourg. For the reasons that follow, we affirm as to the District Court's holding under Article V of the New York Convention, reverse as to the ruling that the arbitrators "exceeded their powers," and vacate with respect to the District Court's order of a supplemental remedy.

## BACKGROUND

The relevant facts are undisputed. EUSA is a *societé anonyme* (analogous to a corporation) organized under the laws of Luxembourg. EB is a Delaware corporation, with its principal place of business in Illinois. Both parties are in the business of publishing and distributing reference materials and other learning products. In 1966, EUSA and EB entered into a Literary Property License Agreement ("License Agreement"), granting EB the right to translate, produce, distribute, and license in any language other than French the contents of a French reference work, *Encyclopaedia Universalis.* In exchange, EB agreed to pay royalties to EUSA based on sales of the non-French editions. On the same day, EB entered into a "Two Party Agreement" with Club Français du Livre ("CFL"), a French corporation. They agreed to form a new entity, Encyclopaedia Universalis France, which would have certain rights to the French-language version of the encyclopedia. The License Agreement required arbitration of all disputes between the parties and explicitly incorporated the arbitration procedures set out in the Two Party Agreement.[1]

---

1. The Two Party Agreement provides that either party may demand that any dispute be referred to arbitration and that:

   [t]he Board of Arbitration shall be composed of two arbitrators of which one shall be chosen by EB and the other by CFL. In the event of disagreement between these two arbitrators, they shall choose a third arbitrator who will constitute with them the Board of Arbitration. Upon the failure of the two arbitrators to reach agreement upon the choice of a third arbitrator, the third arbitrator, who must be fluent in French and English, shall be appointed by the President of the Tribunal of Commerce of the Seine from a list of arbitrators maintained by the British Chamber of Com-

In October 1995, EB stopped making royalty payments to EUSA under the License Agreement. The parties disagreed about EB's obligation to continue such payments and were unable to resolve the matter. After an initial dispute over who would serve as EUSA's arbitrator, in May 1998, EUSA sent a letter to EB describing its claim and naming as its arbitrator Raymond Danziger, an accountant residing in Paris.

In July 1998, EB appointed Robert Layton, a New York attorney, to serve as its arbitrator. Layton and Danziger communicated by fax and telephone between September 1998 and December 1998. During this period, they discussed the scope of the arbitration and the arbitral procedures to be followed, but not the merits of the underlying claim or the identity of the third arbitrator.

In March 1999, Danziger wrote to the President of the Tribunal of Commerce of Luxembourg ("Tribunal") asking the Tribunal to name a third arbitrator. He stated that he and Layton had been unable to agree on a third arbitrator and requested that the Tribunal appoint one pursuant to the License Agreement. Danziger also informed the Tribunal that the parties had agreed for the third arbitrator to be drawn from a list maintained by the British Chamber of Commerce ("Chamber"); he noted, however, that he had recently learned that the Chamber no longer maintained such a list.

Two weeks later, Danziger made Layton aware of his letter to the Tribunal, and Layton immediately had counsel in Luxembourg inform the Tribunal that he intended to object to Danziger's request for a third arbitrator. Before receiving Layton's letter of objection, however, Maryse Welter, the Presiding Judge of the Tribunal, appointed Nicolas Decker, a Luxembourg attorney, as the third arbitrator.

Shortly thereafter, Layton wrote to the Tribunal, objecting that "a major step in the course to be followed under the applicable arbitration clause has been overlooked." According to Layton, he and Danziger "never had [an] opportunity to confer" regarding the choice of a third arbitrator, as required by the Two Party Agreement. The letter went on to suggest that, because the parties' agreement was to be interpreted under the laws of New York, it would be appropriate for the third arbitrator to be a New York lawyer or a London resident familiar with New York law. Layton recommended consulting the London Court of International Arbitration for a list of arbitrators.

In early May 1999, Judge Welter suspended all arbitration proceedings led by Decker. On May 27, 1999, Danziger responded to Layton's letter to the Tribunal, stating that he did not agree that the arbitrator should necessarily be a New York or London lawyer, and "[t]herefore, there is no doubt that we failed to reach an agreement upon the choice of the third Arbitrator."

merce in London at the request of the arbitrator who is first to make such a request. Article 14 of the License Agreement provides, in part:

All disputes arising in connection with the present Agreement shall be finally settled by a Board of Arbitration established and governed by the procedures set forth in the [Two Party] Agreement entered into this day between EB and CFL; provided, however, that EUSA and not CFL shall select one of the arbitrators; and provided further, that the third arbitrator shall be selected by the President of the Tribunal de Commerce of Luxembourg from a list of arbitrators maintained by the British Chamber of Commerce in London at the request of the arbitrator who is first to make such a request.

In December 1999, Judge Welter held a hearing regarding Decker's appointment, which both EB and EUSA attended, and, in February 2000, issued an order that Decker proceed with the arbitration. Decker then scheduled a meeting between the arbitrators, which Layton refused to attend. In July 2000, Decker informed counsel for both parties that the Board of Arbitration, composed of Danziger and Decker, would commence proceedings.

In January 2002, the Board of Arbitration, without the participation of EB or Layton, found that EUSA was entitled to terminate the License Agreement and ordered EB to pay EUSA 3.1 million Euros, plus interest and certain costs.

■ In June 2003, EUSA sued in the Southern District of New York seeking recognition and enforcement of the arbitration award pursuant to the New York Convention, which governs foreign arbitral awards.[2] Plaintiff, at the behest of the District Court, later moved for summary judgment and to confirm the arbitral award. The District Court denied enforcement on two grounds. First, the court concluded that Danziger's request to the Tribunal to appoint a third arbitrator was premature and thus the arbitral board was improperly composed under Article V(1)(d) of the New York Convention. *See Encyclopaedia Universalis, S.A. v. Encyclopaedia Britannica, Inc.,* No. 03 Civ. 4363 SAS, 2003 WL 22881820, at *9 (S.D.N.Y. Dec.4, 2003). The court reasoned that whereas the arbitration agreement required the parties to discuss the identity of a third arbitrator before asking the Tribunal to appoint one, there was no evidence that they had done so before Danziger petitioned the Tribunal. *See id.* Second, the District Court found that the two-person Board of Arbitration exceeded its powers in issuing the award. *See id.* at *10–*11. The court reasoned that "[b]ecause the arbitral tribunal was improperly composed, it had no power to bind the parties; any assertion of such power, by definition, exceeded its mandate." *Id.* at *11.

EUSA appeals both rulings.

## DISCUSSION

### A. *Standard of Review*

■ Where a district court denies confirmation of an arbitral award, we review its findings of fact for clear error, and its conclusions of law *de novo.*[3] *See Pike*

---

2. It was not necessary for EUSA to have attempted to enforce its award by commencing an original action by complaint. The "confirmation of an arbitration award is a summary proceeding," *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.,* 126 F.3d 15, 23 (2d Cir.1997), and legislation implementing the New York Convention calls for the party to "apply to" the court for an "order confirming the award;" it does not envision an original action by complaint. 9 U.S.C. § 207; *see also* 9 U.S.C. §§ 6 & 208; *Int'l Standard Elec. Corp. v. Bridas Sociedad Anonima Petrolera, Industrial Y Comercial,* 745 F.Supp. 172, 182 (S.D.N.Y.1990) ("[A] confirmation proceeding [under the Convention] is not an original action, it is, rather, in the nature of a post-judgment enforcement proceeding.") (alteration in original).

3. EUSA creatively argues that we should apply the standard of review for summary judgment because the District Court granted summary judgment for EB *sua sponte.* While district courts have the power to grant summary judgment *sua sponte,* we have said that they "are well advised to give clear and express notice before granting summary judgment *sua sponte,* even against parties who have themselves moved for summary judgment." *Bridgeway Corp. v. Citibank,* 201 F.3d 134, 139 (2d Cir.2000). Here, there is no evidence that the District Court made the parties aware that it intended to grant summary judgment for EB and no indication in the District Court's opinion that it actually granted summary judgment for EB. Accordingly, we elect to construe the District Court's decision solely as a ruling on a motion to

*v. Freeman*, 266 F.3d 78, 86 (2d Cir.2001); *Yusuf Ahmed Alghanim*, 126 F.3d at 23.

### B. New York Convention, Article V(1)(d)

When a party applies to confirm an arbitral award under the New York Convention, "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. Article V of the Convention specifies seven exclusive grounds upon which courts may refuse to recognize an award. *See* New York Convention art. V; *see also Yusuf Ahmed Alghanim*, 126 F.3d at 19–20. These grounds include when "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties." Art. V(1)(d). The District Court held, pursuant to Article V(1)(d), that the Board of Arbitration was improperly composed and EUSA's arbitral award could not be enforced. We agree.

■ The party opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses under the New York Convention applies. Art. V(1); *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 313 (2d Cir. 1998). The burden is a heavy one, as "the showing required to avoid summary confirmance is high." *Yusuf Ahmed Alghanim*, 126 F.3d at 23 (quoting *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir.1987)). Given the strong public policy in favor of international arbitration, *see Compagnie Noga D'Importation et D'Exportation, S.A. v. Russian Federation*, 361 F.3d 676, 683 (2d Cir.2004), review of arbitral awards under the New York Convention is "very limited ... in order to avoid under-

mining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Yusuf Ahmed Alghanim*, 126 F.3d at 23 (quoting *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir.1993)). We find that EB has carried this substantial burden.

The License Agreement, which incorporates by reference the arbitration procedures set forth in the Two Party Agreement, provides that disputes between the parties are to be resolved by arbitration, and that the Board of Arbitration is initially to be composed of two arbitrators, one chosen by EUSA and one by EB. The Two Party Agreement further provides that "[i]n the event of disagreement between these two arbitrators, they shall choose a third arbitrator .... Upon the failure of the two arbitrators to reach agreement upon the choice of a third arbitrator," the third arbitrator is to be selected by the President of the Tribunal from a list maintained by the British Chamber of Commerce. As previously noted, the Chamber ceased maintaining such a list prior to this dispute.

■ We agree with the District Court that the parties' agreement contains three requirements: (1) the arbitrators must "disagree" before appointing a third arbitrator; (2) the two party-appointed arbitrators must attempt to choose a third arbitrator; and (3) upon the failure of the two party-appointed arbitrators to agree on a third, the Tribunal must appoint one from the Chamber's list. *See Encyclopaedia Universalis*, 2003 WL 22881820, at *8. Here, the first requirement was met because the arbitrators disagreed about the procedural rules to be applied to the pro-

confirm and apply the appropriate standard of review. *Cf. Muller v. First Unum Life Ins.*

*Co.*, 341 F.3d 119, 120–21 (2d Cir.2003).

ceedings. We reject EB's contention that Layton and Danziger were required to disagree as to the merits of the case. Nothing in the language of the Two Party Agreement limits the subject of qualifying disagreements.

■ Fatally for EUSA, the second requirement was not met. There is no evidence that the parties attempted to agree upon a third arbitrator before Danziger asked the Tribunal to appoint one. EUSA points to Danziger's May 27, 1999 letter to Layton, in which Danziger stated that he disagreed with Layton that the third arbitrator should be a New York or London lawyer; Layton had originally expressed this preference in his April 28, 1999 letter to the Tribunal. Danziger concluded in his May 27 letter to Layton that, "[t]herefore, there is no doubt that we failed to reach an agreement upon the choice of the third Arbitrator." In relying on Danziger's letter, EUSA fails to appreciate that the arbitration clause required the two party-appointed arbitrators to disagree on a third arbitrator *before* asking the Tribunal to appoint one. However, Danziger's letter was written *after* Layton's letter, which was written *after* Danziger petitioned the Tribunal. Thus, it cannot serve as evidence that they disagreed *before* he approached the Tribunal. We agree with the District Court that the letter was merely an "ingenious but disingenous" attempt to "construct a process of deliberation and deadlock after the fact." *Id.* at *9.

■ That the Tribunal ultimately stayed Decker's appointment for approximately nine months did not remedy EUSA's failure to comply with the agreement. We agree, for the reasons expressed by the District Court, that "the Tribunal's premature appointment of Decker irremediably spoiled the arbitration process." *Id.* Once it was clear that the Tribunal would likely reappoint Decker if Danziger and Layton failed to agree on a third arbitrator, there was no incentive for Danziger to negotiate in good faith. The nine-month hiatus had no remedial effect.

Furthermore, contrary to EUSA's assertion, the District Court did not improperly elevate "form over substance" in requiring that the two arbitrators disagree before Danziger petitioned the Tribunal. While we acknowledge that there is a strong public policy in favor of international arbitration, *see Compagnie Noga*, 361 F.3d at 683, we have never held that courts must overlook agreed-upon arbitral procedures in deference to that policy. Indeed, as the Supreme Court has said in the related context of compelling arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, "the federal policy is simply to ensure the enforceability, *according to their terms*, of private agreements to arbitrate." *Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (emphasis added). Moreover, the issue of how the third arbitrator was to be appointed is more than a trivial matter of form. Article V(1)(d) of the New York Convention itself suggests the importance of arbitral composition, as failure to comport with an agreement's requirements for how arbitrators are selected is one of only seven grounds for refusing to enforce an arbitral award. As to the complaint that this result exalts form over substance, at the end of the day, we are left with the fact that the parties explicitly settled on a form and the New York Convention requires that their commitment be respected.

We thus conclude that the District Court properly refused to confirm Plaintiff's arbitral award on the grounds that the appointment of a third arbitrator was premature, and, therefore, the composition of the arbitral authority was not in accordance

with the parties' agreement. *See* New York Convention Art. V(1)(d).

### C. FAA, 9 U.S.C. § 10(a)(4)

■■ The District Court also held that the award could not be enforced on the separate ground that the arbitrators "exceeded their powers." *Encyclopaedia Universalis*, 2003 WL 22881820, at *10–*11. This conclusion was incorrect. The phrase "exceeded their powers" comes from the FAA, 9 U.S.C. § 10(a)(4).[4] Under the FAA, an award issued by arbitrators who are not appointed in accordance with agreed-upon procedures may be vacated because the arbitrators "exceeded their powers." *See, e.g., Avis Rent A Car Sys., Inc. v. Garage Employees Union, Local 272*, 791 F.2d 22, 23 (2d Cir.1986). That an arbitration panel exceeded its powers is not, however, one of the seven exclusive grounds for denying enforcement under the New York Convention. *See* Art. V.

■ While it is true that the FAA and the New York Convention provide "overlapping coverage" to the extent they do not conflict, we have held that a district court is strictly limited to the seven defenses under the New York Convention when considering whether to confirm a foreign award. 9 U.S.C. § 208; *Yusuf Ahmed Alghanim*, 126 F.3d at 20 ("in an action to confirm an award rendered in, or under the law of, a foreign jurisdiction, the grounds for relief enumerated in Article V of the Convention are the only grounds available for setting aside an arbitral award"). Thus, we have explicitly declined to read into the New York Convention additional FAA defenses. *See id.* For this reason, the District Court erred in refusing to confirm the arbitral award on the ground that the arbitrators "exceeded their powers."

### D. Supplemental Remedy

■ After denying enforcement of the award, the District Court held that Decker and Danziger were disqualified from any future arbitration between EB and EUSA, that EB could reappoint Layton as its arbitrator, and that if the party-appointed arbitrators fail to agree on a third arbitrator, they should select one from a list maintained by the London Court of International Arbitration. *See Encyclopaedia Universalis*, 2003 WL 22881820, at *10. We find that the District Court erred in specifying these procedures.

"[T]he confirmation of an arbitration award is a summary proceeding," *Yusuf Ahmed Alghanim*, 126 F.3d at 23, and the role of a district court in reviewing an award under the New York Convention is "strictly limited,"[5] *Compagnie Noga*, 361 F.3d at 683. Here, the District Court lacked authority to go beyond refusing confirmation of the award by dictating how the parties should proceed after enforcement was denied. Consequently, we vacate the portion of the District Court's judgment that purports to regulate a subsequent arbitration.

---

4. While the District Court does not explicitly reference the FAA, the two cases it cites are FAA cases. *See Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830, 832 (11th Cir.1991); *Bear Stearns & Co. v. N.H. Karol & Assocs.*, 728 F.Supp. 499, 501 (N.D.Ill.1989).

5. We distinguish this situation, which involves a motion to confirm an arbitral award under 9 U.S.C. § 207, from the situation where a district court does have authority to appoint arbitrators after granting a motion to compel arbitration under 9 U.S.C. § 206. We also do not address the situation where a district court that grants a motion to confirm makes necessary technical modifications to the award.

## CONCLUSION

The judgment of the District Court is AFFIRMED with respect to its denial of Plaintiff's motion to confirm the award, REVERSED with respect to its holding that the arbitrators "exceeded their powers," and VACATED with respect to the supplemental remedy.